UNITED STATES BANKRUPTCY COURT EASTERN
DISTRICT OF NEW YORK
----------------------------------------------------------------x In
re:

Case No. 23-71984-reg

GREGORY DAVIS aka
GREGORY WILLIAM DAVIS,

Chapter 7

Debtor.
----------------------------------------------------------------x
ANDREW M. THALER,
Chapter 7 Trustee for the Estate of Gregory Davis,
aka Gregory William Davis
Plaintiff,
- against -                                    Adv. Proc. No. 8-24-08010-reg

GREGORY DAVIS aka
GREGORY WILLIAM DAVIS,

Defendant.
----------------------------------------------------------------x

## <u>DECISION AFTER TRIAL</u>

The matter before the Court involves an adversary proceeding brought by Andrew

Thaler, the chapter 7 trustee (the "Trustee"), against Gregory Davis aka Gregory William Davis

(the "Debtor") seeking to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(B) and

(a)(4)(A). The basis for the complaint is that the Debtor, with intent to defraud his creditors and

the Trustee, failed to disclose a pending civil action in his petition. This civil action commenced

by the Debtor is a prepetition asset which belongs to the Debtor's estate.

As detailed below, this undisclosed asset is a state court action to recover approximately

$287,500.00 in commissions allegedly owed to the Debtor by his former employer. The Debtor

did not dispute that he failed to disclose the action. However, he claimed, for various reasons,

that he thought the action was closed as of the date the petition was filed. The Debtor asserts it

was only after the petition was filed that he was informed by his state court counsel that the case was still pending. While the Debtor alleges that he undertook to correct the petition by advising his former bankruptcy counsel of this development, the Debtor did not call his former counsel to testify. The Debtor also did not consent, as was his right, to waive the attorney-client privilege regarding this matter. While the Court recognizes this right, the Court may also conclude that the Debtor's explanation for failing to disclose the state court proceeding is insufficient to rebut the Trustee's case in chief.

Despite the Debtor's insistence that the state court action had no value and the Debtor had elected not to pursue it after the action was sent to arbitration, it is not up to the Debtor to make this determination. Indeed, the record reflects that the state court action had some value. Even if the Debtor did not prevail at arbitration, the state court docket reflects that the Debtor's former employer had expressed some interest in settling the claim. While the actual value of the claim may not have been as substantial as the amount sought in the complaint, there was clearly some value in at least obtaining a settlement from the Debtor's former employer.

Upon a detailed review of the evidence presented in this proceeding, having considered the testimony and demeanor of the Debtor, the Court finds that the Trustee has met his burden with respect to both causes of action and Debtor's discharge shall be denied. The ultimate responsibility for the information contained in the petition lies with the Debtor. By choosing to omit the action in his petition at the outset, the Debtor made a deliberate and conscious decision for which he should be held accountable. This omission was compounded when he failed to ensure that the action was added as an asset after the petition was filed. The Court finds that the Debtor failed to provide any credible explanation for his conduct and at a minimum, acted with

reckless indifference to the truth. This reckless indifference is sufficient to deny the Debtor's discharge under 11 U.S.C. § 727(a)(2)(B) and 727(a)(4)(A).

## PROCEDURAL HISTORY

On June 2, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition"). On February 8, 2024, the Trustee filed a complaint objecting to the discharge of the Debtor pursuant to 11 U.S.C. §§ 727(a)(4)(A) and (a)(2)(B).

The Debtor's initial bankruptcy counsel, Gary C. Fischhoff (hereinafter "former bankruptcy counsel"), was replaced by Gerald R. Luckman pursuant to an order issued on March 26, 2025. A stipulation extending the time for the Debtor to file an answer was entered on March 22, 2024. On April 4, 2024, the Debtor filed an answer to the complaint.

On March 7, 2025, the Trustee and the Debtor filed a joint pretrial memorandum. On April 4, 2025, the parties submitted their respective pretrial briefs. A trial was held on April 1, 2025. The Debtor was called as a witness and testified. Neither the Debtor nor the Trustee called the Debtor's former counsel to testify. Thereafter, the adversary proceeding was marked submitted.

## FACTS

The Debtor filed the Petition with the assistance of legal counsel. ECF No. 1. The Debtor amended his schedules multiple times; namely on June 8, 2023, on June 29, 2023, and on September 29, 2023. ECF No. 1, 9, 12, 23 Case No. 8-23-71984-reg.

According to the Petition and trial testimony, the Debtor is the sole owner of two entities –Innovation Diversified LLC and Alchemy GD Inc.– and a 50% owner of Rams Head Marketing LLC. ECF No. 1, Trial Tr. at 19. Additionally, the Debtor holds a bachelor's degree in marketing and has worked in a variety of sales and business development functions for marketing services agencies. *Id* at 18.

On July 29, 2020, the Debtor commenced an action (the "Action") in the New York Supreme Court against Vicus Partners LLC ("Vicus") and Bertram Rosenblatt for commissions allegedly owed to him pursuant to a salesperson agreement in his capacity as an independent licensed real estate agent. Plaintiff's Ex. 2. Judge Gesmer issued an order staying the Action and compelling arbitration. ECF No. 26, Case No. 653492/2020. The case remains open. *Id.*

The Debtor, admittedly, did not schedule the Action in the Petition. ECF No. 1, 9, 12, 23, 25. The Debtor testified under oath at the meeting of creditors pursuant to 11 U.S.C. §341 ("341 Meeting") that he was not owed money and he was not suing anyone at that time. Trial Tr. at 79. When requested by the Trustee, the Debtor provided information about his business dealings but represented to the Trustee that there were no contracts between him and any third party. *Id.*

According to his trial testimony, the Debtor explained his reasoning for excluding the Action from his Petition as follows: The Debtor commenced the Action against Vicus for commissions he allegedly earned, in the approximate amount of $287,500, which he considered to be a significant amount of money. Trial Tr. at 44. Upon the state court's determination to compel arbitration, the Debtor and his then-wife decided not to pursue arbitration because it was not cost effective. *Id.* The Debtor's claims stemmed from his participation in two real estate transactions from which he was entitled to a commission as a real estate agent. *Id.* The Debtor

testified that he was uncertain whether he was still entitled to the commissions following his termination. Trial Tr. 45. Subsequently, unsure whether the transactions ultimately closed and believing that any potential commission would have to be split with his ex-wife, who is the Debtor's largest creditor, the Debtor decided not to pursue the matter further. Trial Tr. at 47. Concerned that the cost of arbitration and attorney's fees would exceed any recovery, the Debtor testified that he directed his state court counsel, Mark Fray, to walk away from the lawsuit[1]. *Id*. However, as reflected in the state court docket, no formal steps were taken to discontinue the Action. Case No. 653492/2020. Additionally, the Debtor also testified on the record that no settlement offer was ever made by his former employer.

On January 14, 2024, the Debtor received an email by his state court counsel advising him that the Action was still pending, and a new judge had been assigned. Trial Tr. at 48; Defendant's Ex. A. Via email, the Debtor notified his former bankruptcy counsel regarding the status of the Action, but he did not inform the Trustee. *Id*. The record does not clarify whether the Debtor and his former bankruptcy counsel discussed this asset and the Debtor did not call his former bankruptcy counsel as a witness.  The only evidence supporting the Debtor's claim that he undertook to correct this omission is the Debtor's own testimony and the one email by the Debtor to his former bankruptcy counsel. *Id*. Subsequently, the Trustee discovered the existence of the Action through counsel for the Debtor's ex-wife. ECF No. 25. To date, the Debtor has not amended his schedules to include the Action.

## DISCUSSION

### *Denial of Discharge under 11 U.S.C. § 727*

---

[1] The Debtor did not call his state court counsel to testify at trial nor has provided any supporting documentation showing that he directed his counsel to formally discontinue the Action.

It is well-settled law that the denial of a debtor's discharge is a drastic remedy that must be construed strictly in favor of the debtor. *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996); *D.A.N. Joint Venture, et al. v. Stephen A. Cacioli* (*In re Cacioli*), 463 F.3d 229, 234 (2d Cir. 2006). However, a discharge under section 727 is a privilege, not a right, and may only be granted to the honest debtor. *Congress Talcott Corp. v. Sicari* (*In re Sicari*), 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994). The plaintiff bears the burden of establishing each element of section 727 by a preponderance of the evidence. *See Minsky v. Silverstein* (*In re Silverstein)*, 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993); *see also* Fed. R. Bankr. P. 4005.

### A.  *Denial of Discharge pursuant to 11 U.S.C. § 727(a)(4)(A)*

The court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. 11 U.S.C. § 727(a)(4)(A). For a debtor's discharge to be denied, a plaintiff must prove by preponderance of the evidence that: (i) the debtor made a statement under oath; ii) the statement was false; iii) the debtor knew the statement was false; iv) the debtor made the statement with fraudulent intent; and v) the statement related materially to the bankruptcy case. *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000) (citations omitted).

"Once the [plaintiff] has produced persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to prove that it was not an intentional misrepresentation or provide some other credible explanation." *Periera v. Gardner (In re Gardner)*, 384 B.R. 654, 662-63 (Bankr. S.D.N.Y. 2008) (citations omitted). A credible explanation is one that is both plausible and, despite all the indications of fraud, is still capable of being believed. *In re Halishak,* 337 B.R. 620, 629 (Bankr. N.D. Ohio 2005) (citing *Palmer v.*

*Downey* (*In re Downey)*, 242 B.R. 5, 14 (Bankr. D. Idaho. 1999)). The court should not engage

in speculation for the debtor, as it is the debtor, and the debtor alone, who is in the best position

to know of and be able to explain the event in question. *Id.*

    "The obligation of full disclosure is crucial to the integrity of the bankruptcy process." *In re*

*Riccardo*, 248 B.R. 717, 723 (Bankr. S.D.N.Y. 2000). The cardinal rule for a showing of good

faith in a § 727(a)(4)(A) matter is when in doubt, disclose. *In re Sapru,* 127 B.R. 306, 315–16

(Bankr.E.D.N.Y.1991). When a debtor only voluntarily discloses information after its existence

is uncovered by a third-party (e.g., a trustee or creditor), good faith is unlikely to be found. *See,*

*e.g.,* Matter of Kilson, 83 B.R. 198, 203 (Bankr. D. Conn. 1988).

        As the Court of Appeals for the First Circuit has held:

> The very purpose of certain sections of the law, like 11
> U.S.C. § 727(a)(4)(A), is to make certain that those who seek the
> shelter of the bankruptcy code do not play fast and loose with their
> assets or with the reality of their affairs. The statutes are designed
> to insure that complete, truthful, and reliable information is put
> forward at the outset of the proceedings, so that decisions can be
> made by the parties in interest based on fact rather than fiction ...
> Neither the trustee nor the creditors should be required to engage
> in a laborious tug-of-war to drag the simple truth into the glare of
> daylight.

*Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir.1987).

    The omission in the debtor's documents and testimony cannot be due to mere

carelessness – the plaintiff must establish that the debtor acted with fraudulent intent.

*Painewebber Inc. v. Gollomp* (*In re Gollomp*), 198 B.R. 433, 438 (S.D.N.Y.1996). Fraudulent

intent may be inferred from the circumstances of the case. *Sperling v. Hoflund* (*In re Hoflund)*,

163 B.R. 879, 882, 883 (Bankr. N.D. Fla. 1993). Such circumstances may include "inferences

from the debtor's conduct, all surrounding circumstances, and the apparent course of conduct."

*Palmer v. Downey*, 242 B.R. at 13 (citations omitted). If a debtor is found to have exhibited a

"reckless indifference to the truth," then that may be sufficient to establish the requisite fraudulent intent. *See Diorio v. Kreisler-Borg Constr. (In re Diorio)*, 407 F.2d 1330 (2d Cir. 1969) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt . . . . Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to the truth . . . is the equivalent of fraud.") (citations omitted); *See also Perlbinder v. Dubrowsky*, 244 B.R. 560, 571-72 (E.D.N.Y. 2000). "[I]ntent to defraud 'involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression.' A reckless disregard as to whether a representation is true will also satisfy the intent requirement." *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685-86 (6th Cir. 2000) (quoting *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)).

In the case at bar, the Debtor made a false statement under oath. The Petition was filed under the penalty of perjury which is equivalent to an oath. *In re Carl,* 517 B.R. 53, 69 (Bankr. N.D.N.Y. 2014) (*citing Nof v. Gannon* (*In re Gannon*), 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994))*.* The Debtor did not disclose his claim against Vicus in the Petition and Statement of Financial Affairs, which was also signed under penalty of perjury. ECF No. 1. The Debtor acknowledged at trial that the Trustee discovered the Action from the Debtor's ex-wife. ECF No. 25. At the 341 Meeting, the Debtor answered "no" when as to whether anybody owed him money and whether he was suing anyone at this time. ECF No. 25. In Schedule B to the Petition, the Debtor answered "no" to questions as to whether the Debtor held claims against third parties and whether Debtor had filed a lawsuit or made any demand for payment. ECF No. 1. In Part

4(9) of his Statement of Financial Affairs, the Debtor responded that he was not a party to any contract disputes or collections suits. *Id.*

Having established the existence of false statements in the Petition regarding the Action, the burden of proof shifts to the Debtor to produce a credible explanation for making the false representation. *See In re Spitko*, 357 B.R. 272, 313 (Bankr. E.D. Pa. 2006). Based on the evidence provided at trial, the Court finds that the Debtor failed to meet this burden. The Debtor answered "yes" when asked at trial whether he made the conscious decision to exclude the Action. His given reason was that at the time he signed the Petition, he "thought the Action was dead." Trial Tr. at 82. The Debtor explained at trial that he previously made that determination by weighing the costs of arbitration and what he could have gained and decided not to pursue the Action further. Trial Tr. at 27-28. The economic analysis by the Debtor as to whether the claim against Vicus had any value does not change the fact that he failed to disclose an asset. Notably, in his Schedules E/F, the Debtor disclosed a claim against a third party for an unknown amount with the explanation "possible money owed", which speaks to the Debtor's understanding that he had to disclose a claim even if the amount is unknown. ECF No. 1. Additionally, in Part 6 of the Statement of Financial affairs, where the Debtor listed all legal actions he is involved in, the prompts specifically ask for the status of the case, even if a case is concluded. *Id.* Finally, the Debtor did not produce any of his employment documents with Vicus when asked by the Trustee. Trial Tr at 53.  In addition, there had been some discussions of a settlement of the Action, which supports a finding that contrary to the Debtor's assertions, the Action had some value even if the Debtor lost in arbitration.

When the debtor acts deliberately and consciously in deciding not to disclose an asset, a false oath is "knowingly" made. Notably, even though the Debtor was represented by counsel at

all times, he made the determination not to disclose the claim seeking approximately $287,500.00 against his former employer. The Debtor had a paramount duty to carefully consider the questions posed in the Petition and to verify that all information was correct. *Abraham v. Stuart*, No. 15-CV-04864 (JFB), 2016 WL 4045432, at *8 (E.D.N.Y. July 28, 2016), aff'd sub nom. *In re Abraham*, 693 F. App'x 59 (2d Cir. 2017).

Based on the evidence provided at trial, the Court finds that the Debtor made the statement with reckless indifference to the truth. Under the reckless indifference to the truth standard, courts consider the following three non-exclusive factors: (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) the debtor's degree of financial sophistication as evidenced by his or her professional background; and (c) whether the debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies. *In re Singh,* 585 B.R. 330, 339 (Bankr. E.D.N.Y. 2018) (citations omitted).

The Debtor understood the serious nature of signing the Petition, as he acknowledged it was signed under the penalty of perjury. Trial Tr. at 22. Additionally, the Debtor has a business background—he is the owner of three companies, has worked in sales and business development functions for marketing services agencies, and holds a bachelor's degree in marketing. *Id.* at 18. Moreover, to date, the Debtor has not amended his schedules to include the Action, even though he acknowledges his ongoing obligation to do so. *Id.* at 56. According to his trial testimony, the Debtor knew about the open litigation since January 14, 2024, when he informed his former bankruptcy counsel. *Id.* at 48. There is no record of the Debtor taking the necessary steps to correct the Petition nor is there a record of specific actions taken by his former counsel after discovering the open litigation. During trial, the Debtor testified:

> Q: And from that point in time in January of 2024 up until today, have you done anything to amend your schedules to disclose this lawsuit?
> A: That's something you'll have to ask my former bankruptcy counsel.
> Q: Is he still representing you in this matter?
> A: No, I terminated him.

Trial Tr. at 49. The Court cannot infer that the failure to amend the Petition and schedules was the former counsel's fault especially when the Debtor did not call his former counsel as a witness or consent to waive his attorney - client privilege. Based on his business experience, an inference can be drawn that the Debtor was able to understand the nature of his actions. It is the Debtor's ultimate responsibility to verify the information in the Petition, even when the debtor is represented by counsel. *In re Adler*, 494 B.R. 43, 78 (Bankr. E.D.N.Y. 2013) ("the debtor's "advice of counsel" defense is insufficient to meet the burden established in § 727(a)(4)(A*)"*; s*ee also In re Ardisson,* 272 B.R. 346, 359 (Bankr. N.D. Ill. 2001) (especially where a debtor is an experienced businessman, he may not be able to avoid responsibility for fraudulent omissions based on counsel's errors.)

The nondisclosure of the Action is materially related to the bankruptcy case because it bears a relationship to the discovery of estate assets and existence of property of the estate. *See In re Singh*, 585 B.R. 330, 340 (Bankr. E.D.N.Y. 2018). An asset may be material even if it did not cause financial prejudice to the estate or creditors "if it aids in understanding the debtor's financial affairs and transactions." *In re Hoblitzell,* 223 B.R. 211, 215-16 (Bankr. E. D. Cal. 1998). Finally, the Debtor has never amended the Petition to add the Action.

The totality of the circumstances around the Debtor's failure in this case show a reckless indifference for the truth, and thus the Court finds the Debtor's omissions to be knowing and fraudulent. *See In re Nazzaro*, 2013 WL 145627 at *7 (denying discharge where debtor omitted a

single asset because of his belief that the asset was valueless). Therefore, the Court finds that the Debtor's discharge shall be denied pursuant to §727(a)(4)(A).

**B.  *Denial of Discharge pursuant to 11 U.S.C. § 727(a)(2)(B)***

Section 727(a)(2)(B) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge, unless ... the debtor, with intent to hinder, delay, or defraud a creditor ..., has …. transferred or concealed.... property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(B). *See also Pisculli v. T.S. Haulers* (*In re Pisculli*), 408 F. App'x 477, 479 (2d Cir. 2011).

This Court has already found that the Debtor's nondisclosure of the claim against Vicus in the amount of approximately $287,500.00 was made with reckless indifference to the truth. *See Mazer-Marino v. Levi* (*In re Levi*), 581 B.R. 733, 745 (Bankr. S.D.N.Y. 2017) (finding under 727(a)(2) that incorrect statements on schedules can amount to proof of fraudulent intent); *see also In re Beatty*, 583 B.R. 128, 137 (Bankr. N.D. Ohio 2018) ("A reckless disregard for or indifference to the truth will also demonstrate fraudulent intent [under section 727(a)(2)]. Though a subjectively fraudulent intent is required, said intent can be inferred by review of the circumstances surrounding a debtor's objectionable actions.") (citations omitted).

11 U.S.C. § 727(a)(2)(B) in comparison with 11 U.S.C. § 727(a)(4)(A) focuses on post-petition conduct. *In re Singh*, 568 B.R. 187, 202 (Bankr. E.D.N.Y. 2017). Here, the Debtor did not transfer any property post-petition but failed to disclose the Action on multiple occasions even after he claims to have received notice that the Action was pending post-petition, on January 14, 2024. Trial Tr. at 48, Defendant's Ex. A. Although the Debtor claims that he immediately informed his former bankruptcy counsel, and there is an email from the Debtor to his former bankruptcy counsel that the Action was still pending, the record is barren of any

corroborating evidence that the Debtor sought to disclose this asset to his creditors. The Debtor could have called his former counsel to testify regarding counsel's alleged failure to amend the schedules, but he did not, nor did he consent to waive the attorney-client privilege he held with respect to these conversations, if any. In fact, the Trustee only discovered the open litigation from the Debtor's ex-wife. ECF No. 25. Additionally, the Debtor testified that he is aware of his ongoing obligation to amend his schedules during the course and the case, and he did amend them multiple times, without disclosing the Action. Case No. 23-71984-reg, ECF No. 9, 12. Moreover, the Debtor did not produce the documents requested by the Trustee relating to his employment with Vicus. Trial Tr. at 53; *See In re Gardner,* 384 B.R. 654, 663 (Bankr. S.D.N.Y. 2008) (stating that concealment is evidenced when a debtor withholds knowledge or refuses to divulge owed information because there is a "duty to tell" once a debtor begins to set forth the facts surrounding a subject) (citations omitted). Notably, the Debtor's testimony conflicts with the state court record. Case No. 653492/2020, ECF No. 20**.** In the Court's view, the Debtor's nondisclosure is more than a mistake, and the Debtor's explanation for the failure to correct the Petition post-petition rings hollow. Based on the Debtor's self-serving testimony, which he could have corroborated with testimony from his former bankruptcy counsel if he chose, the Court finds that the Debtor has failed to rebut the Trustee's assertion that the Debtor concealed property of the estate post – petition to hinder, delay or defraud his creditors. The Court concludes that the Trustee has established by a preponderance of the evidence that the Debtor's

discharge shall be denied under § 727(a)(2)(B).


## CONCLUSION

For the foregoing reasons, judgment is granted in favor of the Plaintiff as the first and second causes of action under §§ 727(a)(2)(B) and (a)(4)(A), respectively. Therefore, the Debtor's discharge is denied.



Dated: Central Islip, New York
      May 20, 2025

_____
Robert E. Grossman
United States Bankruptcy Judge